This appeal really involves the meaning of one piece of paper. And in the appendix it's A-236. And it's a piece of paper from Victory Commercial Management. It's dated August 27, 2018. Paragraph 1 says we're offering you the position of Chief Operating Officer. 3 talks about the compensation and the benefits. 4 offers a bonus. 5 provides additional compensation that Mr. Flemm had asked for. I think all that's true. The document speaks for itself. But I guess the argument is that it's all contingent on the board approving a business plan, right? Yes, but that's not the relevant point. The relevant point is whether this is a bona fide offer of employment. And what we know is it was not. And Mr. Flemm was duped into believing that it was and resigned. But why would it be reasonable for him to resign if he knew that there was a contingent predicate that hadn't yet taken place? That was a different point, Your Honor. He thought he was getting a bona fide offer letter. We know it was not. What is the fraudulent statement or omission? That's not the issue. It's a fraud claim, right? It's a fraud claim. What is the fraudulent statement or omission that he relied on to his detriment? If the state law of New York is. What is the fraudulent statement that he relied on to his detriment? It says that this offer is in effect to October 1st, 2018. This is not an offer letter. It's not an offer letter. It's not what it purports to be. And the testimony from Mr. Lang's deposition is it was only a draft, that it was meaningless. Does it not say up above that it's contingent on board acceptance of the business plan? Understood, but he didn't. So how is it reasonable for him to go and quit his job when he doesn't know whether the board has approved his business plan? That is a different issue. And I agree with you, he should not have done that. But that's not the point. He made a decision. Do you not need reasonable reliance for a fraud claim? Of course. So where is the reasonable reliance? The reliance is he thought it was an offer letter. It's not. Mr. Boson, when your client emailed and said I'm thinking about when I should stop the other job. The email in response was, it's talking about receiving the business plan. And it says I'm still waiting for the board's final approval of the specific terms in the updated offer letter. I tried my best to explain to the board, hope it can be approved in the early of next week. And then regarding the boarding time, as you know, as we discussed before, once the business plan is fully accepted by the board, you can please be on board immediately. Hope you can understand. So in addition to the issue of reasonable reliance, there's no even intent to deceive. The response was there's an updated offer letter that's got to go to the board and you have to submit your business plan. Your Honor, that's predicated on the fact that he got an offer. He didn't. He says, and this is the key fact that the trial court omitted to consider, which was in Mr. Flim's affidavit. It says if I had known that this was not a real offer letter, I would not have resigned. I think it's for the jury to decide, taking the totality of the facts. If you look at the New York State law, this is a diversity case. It says if the appellant can establish a strong inference of fraudulent intent by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness, he's proved his case. Does he intend to deceive your client if he told him this updated offer letter has to be approved by the board and your business plan has to be approved by the board? If he had said to him, don't worry about that business plan, that's going to be fine, or the board approved your business plan, even though he hadn't submitted it at that point, that would be a whole different case. Here he specifically told him the updated offer letter has to be approved by the board and your business plan has to be approved by the board. So how is he deceiving him? He accepted that risk in the belief that he had signed an actual offer letter. This is a meaningless piece of paper according to what Victory said. If he was told, you know, what you signed and it says, I agree that this offer is in effect until – I'm sorry, October 1, 2018, doesn't mean anything. This is a useless piece of paper. But he didn't know that. It's a conditional offer, right? It's no offer. On the face of it – No, it's not an offer because they've come back and they've said this is a draft of an offer. I'm accepting what he believed. He believed this to be an offer, but he had to believe that it was a conditional offer. Isn't that so? He wasn't – it depends on what – wait. The letter wasn't even signed. The letter wasn't even signed by anyone from Victory. It wasn't required to. Okay. The letter says if you agree with the above, please sign below. The offer is in effect until October 1, 2018. So you're saying it was reasonable for him to quit his job when he received a letter that wasn't signed that was conditioned on board approval that he had not yet gotten? I'm saying that if he knew that this was not an offer letter, this was a meaningless piece of paper, which he did not know, obviously he would not have quit. Could you just answer Judge Chin's question, though? He's asking whether it was reasonable to rely. Was there justifiable reliance? I thought a minute ago you said that it was not a smart move. He shouldn't have done that. So was there reasonable reliance or not reasonable reliance here? Reasonable reliance on what? That's the question. Was he right to reasonably rely that this was an offer? Yes, he was. But it wasn't. That's the point. Was he justified in relying on that letter as a basis for quitting his job? That's the question. If he knew the facts, he would not have quit. What facts? If this was an offer, if this was a bona fide offer. So believing it to be a bona fide offer, but knowing it's contingent, he nonetheless quit his job. Correct. Had he known that it was a draft offer that was contingent, he would not have quit his job. Correct. And then the question is, is it justifiable to have made a different decision based on those two slightly different options? Well, Your Honor, if somebody says it's a draft offer, I think the person would say, you know, let me see the final offer before I quit my job. He never was given that option. What we learned in the deposition is they didn't consider it to be effective at all. They said it had to be signed by the other side. Nowhere on this does it say draft. Does it say draft offer? If it expired on October 1 and he didn't satisfy the condition, he didn't submit the business plan by October 1? There's no date. That's, Your Honor, that's Victory's argument, and that's a misstatement of the document. There's no requirement to submit the business plan by October 1. The letter had to be returned by October 1. Okay. So that's what he did. That's my point. If he thought that if this, in fact, was the letter, the offer letter, then he exercised proper judgment. But there was no way that he knew that this was a draft. If he doesn't say draft, the deposition testimony that was given was frankly quite shocking. I think he was tricked. For what purpose was he tricked? Was their goal to just get him out of Howard Hughes? There was a recklessness because Mr. Lange, who he dealt with, knew that he was relying on the fact that this was an offer. They told him you have to come on board. It's important. Mr. Lange, nobody's told him he should quit his job before the board approved, right? No, no. That's his decision, but it was based on the fact that he thought this was an offer. It says this offer, but it wasn't this offer. There was no other offer. All right. So I think, I mean, now I think we're just kind of circling back to some things we've talked about. We've gone over a little bit, but you've reserved two minutes of rebuttal, so we'll now hear from, is it Mr. Luke? Just one more thing. I think it's a jury question here, and the jury should make the decision. Thank you. If you could put your mask back on for the moment, Mr. Burson, and is it Mr. Luke? Yes, Your Honor. All right, Mr. Luke. You can keep the mask. You can take off the mask. It's your choice. Nobody's pressuring you one way or the other. Thank you, Your Honor. Is that your last trip? Yes, sir. Yes, Your Honor. Thank you, Your Honor, and may it please the Court. The appellant's argument rides on mostly Strawman-Red Herring. The main argument and the main point here, which the district court has correctly identified and as Your Honors seemingly have to have also concluded, is that the offer was conditioned on the acceptance of the business plan by the Board of Directors of Victory Commercial Management. This was very clear in the offer letter, and this has been accepted by the appellant. The appellant at A209, paragraph 6, recognizes that the offer letter contained the condition of the business proposal to start the position. I believe that this is really the only point that is necessary in order to find for the appellee. I think the argument seems to be that he was more willing to take a chance and leave his job, believing that it was more a firmer offer than it otherwise might have been. He thought it was actually an offer, albeit a conditional offer, and that gave him some confidence to quit his job, even though it wasn't 100%. I guess that's one way of looking at it. Why isn't that a fraud? That's how I understand the appellee's argument. Actually, there's a lot of evidence in the record that suggests that this was not the September 27 offer letter that the appellee's argument rides on. It's not the final version. There are references on the September 28 email at A209. But we're not trying to decide whether it was or wasn't the final version. We're assuming for the moment that he believed this was final when it turned out only to be a draft. So, Your Honor, this offer letter was dated September 27, and Mr. Flemm quit his job at HHC, Howard Hughes Corporation, on October 17 or 18. There's some discrepancy on which exact date it was, October 17 or 18, but it's one of those days. However, between the September 27 offer letter and the October 17 or 18 quitting, there was a meeting with Mr. Leong. You can find that at A91. And then at A90, on October 2, Flemm has an email that says, please get back to me on the items we discussed on Friday, the Friday being that September 28 meeting. So they were still negotiating terms. Mr. Flemm knew that the September 28 letter was actually not the final letter. I'm surprised that they bring up this point. Additionally, an October 7 email, which is still 10 days before Mr. Flemm quit, mentions an updated offer letter is being produced. So actually this offer letter of September 27 is well known to Mr. Flemm to not even be the final offer letter. If you look at the email chain from A103, which contains that October 7 email from Mr. Leong, Mr. Flemm continues the conversation, never mentioning any surprise that there's going to be an updated offer letter. It doesn't seem unusual to Mr. Flemm. He's clearly read the email saying that there would be an updated offer letter because he continues the email chain. Additionally, Mr. Flemm himself in his affidavit, page A251, admits he was never pushed to resign at paragraph 5. Well, let me just go back to Judge Chin's point that the fundamental question in the emails, obviously, I cited that email. I understand the importance of that. But on this issue of if there is a condition to an offer that somehow you can't reasonably rely on other representations that were made, I mean, you could imagine a lot of scenarios where even though there's a condition, you could still have a fraudulent inducement, right? If you, for example, if you offer someone a job and say, I'm going to pay you a million dollars if you take this job and you have to pass a physical. And you lied to them. You had no intention of paying them a million dollars. You're going to pay them $10,000. And they're confident they're going to pass the physical, so they rely on the million dollar representation. And they quit a job thinking, I'm definitely going to pass the physical. I just had a physical. But it was a lie and they weren't going to be paid a million. Just because they had a condition on the offer doesn't mean they couldn't potentially have a fraudulent inducement claim, right? Well, there was no evidence in the record that there was the – that satisfied the intent. I understand that's a different issue whether or not there was an intent to deceive. But on this issue of that you can never reasonably rely on an offer if there is a condition to it, I don't think that's a proposition as a matter of law, right? Well, that was not the final offer letter. It was never meant to be. There is one dispute on the record as to whether or not Phlegm actually presented the signed offer letter. I thought one of your arguments was that because the board had to approve it that you can't reasonably rely. I thought that was one of your arguments, but maybe I was misunderstanding that. The board did not approve the business plan at that point. If Phlegm satisfied that condition, the later version of the offer letter – this was just a draft of an offer letter. The negotiations were always understood to be ongoing. But that's a disputed fact, right, whether this was a draft or whether this was firm or final. I don't think that can be a dispute because there's evidence on the record that there's negotiating going on. If you want to make a dispute, I don't think that's a valid dispute. So what terms were changing? So I think the main one was there was health insurance that was going to start 90 days after the start of employment. However, I believe Mr. Phlegm's wife was pregnant at the time, and so the medical expense of that would be quite large. So he really wanted to have the medical coverage start earlier. That's in the email chains on the record that health insurance is very – I believe the reference was because Red Deer Commercial Management has a parent company in China, and so he was saying in America that health insurance is very important for an employer to provide. And so he really wanted to cover that charge. I believe that was the main concern. I can't speak to his everything, but on the record, that's what it appears to be. Thank you. Throughout the case – well, yeah. The three points that were brought up in the appellant's argument are all involved the offer letter. Was the offer letter immaterial? Was there evidence of fraud that could have been relied on? And should we let the judge decide whether Red Deer Commercial Management was conscious or reckless with the offer letter? I don't believe that any of those are meritorious arguments. The offer letter was clearly just a draft because there's evidence on the record that Mr. Phlegm either ignored or recognized at the time. Okay, but it's a different hypothetical. Assume that it was a final offer. This is the agreement, but it is contingent on the board's approval of a business plan. Correct. If that's the case and he quits his job, you're still arguing that that's not justifiable reliance, that nobody would be justified in quitting their job until the condition precedent has been met, correct? Well, if there are further discussions that might have induced him, but it appears that even after he mentioned quitting his job to Mr. Leong, Mr. Leong said, hey, you still need to wait for the board approval. He reminded him in an email four days later after he stated his intention not to quit. Mr. Leong, it literally advised him not to quit. I don't think you're getting the question. The question is, assuming it was a final offer but it had a condition in it, would it have been reasonable for him to rely on it to quit his job? I don't think it would have been reasonable for him to rely on it to quit his job because he didn't fulfill the condition yet. I don't think anyone – even the appellee's attorney admits that he shouldn't have done it, right? I don't think it was reasonable for – it was not a reasonable reliance on the condition. It didn't satisfy the condition. I don't think anyone would reasonably quit their job before they've satisfied the condition, especially with there being a stock option exercise date only a few days away from his quitting. All right. Okay. Thank you very much. Thank you, Your Honor. Mr. Berson, you have two minutes of rebuttal. And you can take your mask off if you wish. You're not required to. It just seemed like you wanted to before. Thank you again. What we have are two versions of facts here. The offer letter says this offer is in effect until October 1, 2018. And counsel just said this is not the final offer. This is the doublespeak that trapped Mr. Flem. It's either an offer or it's not an offer. The condition of the offer is – rather, there is no condition to the offer. The hiring was conditioned upon him being hired. Again, this was not an offer. Mr. Flem believed in whatever – however you criticize his decision-making, he thought it was a real offer. Well, assume – yes, we're assuming for the moment he believed it was a real offer. The issue is did he justifiably rely on that offer in quitting his job, knowing that there was still a condition that had to be met that hadn't yet been met? Is that justifiable? You're saying if this was a real offer? No, just assuming in his mind it was a real offer. Right. It doesn't matter really what it was. Assuming that it was a real offer. Assuming that they didn't – well, let's assume he believed it was a real offer. Right. Was he justified in quitting his job knowing that there still was – I don't think so. But the question is if it wasn't a real offer, was he justified? And the answer to that is no. And an appellant can establish a strong inference of fraudulent intent, alleging facts that constitute circumstantial errors of consciousness, behavior, or recklessness. That satisfies the fraud requirement under New York law, and this is a diversity action. There's also been some misstatement of the record. There is no other offer letter that was under discussion. The final offer letter is the one that has been produced. There is no other offer letter. I don't understand that because I just read to you an e-mail. Mr. Liang told your client on October 7th that an updated offer letter is being submitted to the board. So I don't understand how that – It was referring to this one. That's the updated one? Yeah. There isn't another. He never gets another updated offer. That's the last offer letter. That's the offer letter. That was the only offer letter he got. He got two. He got one September 13th, which he did not sign. He wanted more money. He wanted $70,000. They agreed. That was the one that he signed. That was the second offer letter. He thought we'd reached an agreement. That's the terms of an offer. Okay. So that's the point. And it all hinges on the fact in his affidavit, which is before the court, paragraph 19, and he says, hey, if I had known this was a draft, of course I wouldn't have quit. That's our point. And they knew that he was relying on the fact that this was a bona fide draft. He made a career decision on that. And to find out the deposition that that piece of paper he signed according to victory meant nothing, I think is something that a jury is entitled to consider. Thank you for your time. Okay. Thank you very much. We will reserve decision. Thank you both.